UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RAMSEY ASSET MANAGEMENT, LLC )<br><br>Plaintiff, )<br><br>v. )<br><br>THE STANDARD INSURANCE COMPANY )<br><br>Defendant. ) | C.A. No.: 1:23-cv-00453-CFC |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## <u>MOTION TO TRANSFER VENUE</u>

Plaintiff Ramsey Asset Management, LLC ("RAM"), by and through its undersigned counsel, respectfully requests the Court to deny Defendant's Motion to Transfer to the United State District Court for the Eastern District of Virginia.

### INTRODUCTION

RAM has filed this lawsuit against the Standard Insurance Company for breach of contract, bad faith breach of contract, and wrongful refusal to honor its obligations for two business overhead expense policies ("Policy" or "Policies"). The conduct by the Defendant is the same as in the District Court Docket No. 22-

{00284638.1}

cv-01555-MAK, but the operative facts regarding venue are not. This case is distinguishable because RAM, as Policy owner, is asserting the claims against Defendant rather than William Ramsey and RAM is a Delaware corporation.

## ARGUMENT

The Third Circuit analyzes a number of private and public interest factors protected by 28 U.S.C. § 1404(a) to determine whether the "balance of convenience of the parties" tips in favor of transfer.[1] In a previous filing, the District Court found eight of the twelve factors relevant to the facts: (1) Plaintiff's choice of venue; (2) Defendant's preference; (3) whether the claims arose elsewhere; (4) convenience of the parties as indicated by their physical and financial conditions; (5) convenience of witnesses; (6) case congestion; (7) local interest and (8) public policy factors.[2]

---

[1] *Jumara v. State Farm Insurance Company*, 55 F.3d 873, 879-80 (3d Cir. 1995).
The factors are subsumed into two categories: private interests and public interests.
The private interests are (1) plaintiff's forum preference as manifested in the original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties as indicated by their relative physical and financial condition, (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, (6) and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
The public interests are (1) the enforceability of the judgment, (2) practical considerations that could make the trial easy, expeditious, or inexpensive, (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) the local interest in deciding local controversies at home, (5) the public policies of the fora, and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

[2] The Court found the other factors were neutral. *See* Defendant's Ex. C at 5.

1. **Plaintiff's Forum Preference**

The District Court of Delaware has held that a "plaintiff's choice of forum is the *paramount* consideration in determining whether to transfer an action under §1404(a)."[3] RAM has chosen to litigate in Delaware, and that preference "should not be lightly disturbed."[4] This is particularly true when the plaintiff decides to sue on its "home turf".[5] RAM is the owner of the Policies and is incorporated in Delaware. Previously, the District Court did not hold this factor in high regard based on William Ramsey's citizenship. Conversely, the Court should prioritize this factor now because RAM was formed in Delaware, has no current relationship elsewhere, and Ramsey is not a party.

2. **Defendant's Forum Preference**

Defendant states that its preferred forum is Virginia, yet the record does not support this position. Defendant had the opportunity to raise this preference after the Ramsey Complaint was initially filed in September of 2022 but never moved to

---

[3] *Smart Audio Technologies, LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 726 (D. Del. 2012). *See also, Intellectual Ventures I LLC v. Checkpoint Software Technologies Ltd.*, 797 F. Supp. 2d 472, 479 (D. Del. 2011) (emphasis added).
[4] *TriStrata Tech., Inc. v. Emulgen Laboratories, Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008) (Quoting *Stratos Lightwave, Inc. v. E20 Commun., Inc.*, CIV.A. 01-309-JJF, 2002 WL 500920 at *7, (D. Del. Mar. 26, 2002)).
[5] *Intell. Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 755-56 (D. Del. 2012).

transfer. Instead, the Court made the decision *sua sponte*, asking the parties to explain why a contractual dispute between a Virginia resident and an Oregon corporation shouldn't be transferred to Virginia. The Court should not rely on Defendant's "preference" because it does not appear to truly have one; instead, Defendant is merely echoing the Court's former ruling.

It is the Defendant's burden to persuade the Court that transfer is appropriate, not only for its convenience, but in the interests of justice.[6] Here, the interests of justice require remaining in Delaware. Defendant describes the parties as being firmly entrenched in Virginia. This is not correct. The Third Circuit has held that when assessing actual business activities of a company to determine its principal place of business, an "inactive" corporation -- one conducting no business activities -- has no principal place of business and is instead a citizen of its state of incorporation only.[7] RAM is an inactive business, conducting no operations in the state of Virginia as of today. The fact that RAM conducted business in Virginia five years ago has no bearing on the interest of justice to litigate there now. RAM has no employees. It has no brick-and-mortar operation. There is no Virginia presence to illustrate an easement of justice to try this case in

---

[6] *C. R. Bard, Inc. v. Angiodynamics, Inc.*, 156 F. Supp. 3d 540, 547 (D. Del. 2016).
[7] *Midlantic Nat. Bank v. Hansen*, 48 F.3d 693, 696 (3d Cir. 1995).

Virginia. Due to RAM's Delaware incorporation and present-day inactivity, the Court should only look to its Delaware nexus.

Further, Standard conducts business nationwide and is based out of Oregon. Defendant may point to the residency of CEO William Ramsey. But he is not a party to this action any longer because Defendant represented to the Court that under the policy language he had no standing to pursue the claims. So he dismissed the claims and now the Delaware corporation is pursuing the claims in Delaware. Ultimately, the interests of justice do not favor transfer to Virginia.

### 3. Whether the Claims Arose Elsewhere

The question of whether the claims arose elsewhere is not relevant. This claim arose from Defendant's denial of the insurance claim in 2020. The complaint was filed in 2023. RAM had not been operational since 2019. Thus, this claim arose from the denial of coverage of an inactive LLC, with its only jurisdictional nexus being its place of incorporation. While RAM may have operated in Virginia until 2019, the insurance denial did not arise there. There is no nexus between Virginia and this cause of action.

### 4. Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition

Neither party is inconvenienced by the current venue. Plaintiff specifically sought out experienced Delaware insurance counsel to pursue the claims in

Delaware. Defendant is an insurance company, which conducts business in 50 states, including Delaware. It authorizes insurance agents to conduct business in Delaware. It has filed other lawsuits in Delaware. There is nothing in the record to support that litigation in Delaware would impose an undue financial or physical burden on Defendant. The fact that Defendant operates throughout the United States belies that notion. Conversely, transferring the case to Virginia would work a hardship on RAM who would have to hire a second law firm in Virginia to pursue the claim in Virginia.

The District Court of Delaware has held that convenience factors do not weigh in favor of transfer because "[d]iscovery is largely electronic, with depositions taking place where the deponents reside or work. Moreover, most trials now are scheduled for less than seven days, and involve only a handful of live witnesses and a limited number of documents."[8] Thus, this factor is neutral.

### 5. Convenience of the Witnesses

The Court previously held that this factor shall favor transfer due to the Maryland-based witnesses. However, Johns Hopkins University, where Ramsey was hospitalized, and where one of his doctors worked, is approximately an hour and 17 minutes from the District Courthouse in Alexandria. It is approximately an

---

[8] *C. R. Bard, Inc. v. Angiodynamics, Inc.*, 156 F. Supp. 3d 540, fn 6 (D. Del. 2016).

hour and 32 minutes from the District Court of Delaware. This 15-minute difference is insignificant.[9]

Further, the consideration is not whether witnesses are inconvenienced by litigation but, rather, whether witnesses "actually may be unavailable for trial in one of the fora."[10] There is nothing in the record to indicate that any witness would be unavailable to testify in Delaware.

### 6. Relative Administrative Difficulty Due to Court Congestion

This factor appears to be the most speculative of the *Jumara* factors.[11] As one District Court held:

> . . .scheduled trial dates are often subject to change, and the district court's anticipated time to trial is significantly shorter than the district's historical time to trial. Because this factor often calls for speculation, where "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors."[12]

Here, the District Court relied on statistics showing a higher case load in Delaware than in Virginia. But it failed to note that the Eastern District Court of Virginia had 19 vacant months amongst its judgeships last year, which will likely

---

[9] This 15-minute difference likely dwindles when factoring in unpredictable Beltway traffic between Maryland and Virginia.
[10] *Jumara* at 879.
[11] *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009); *In re Juniper Networks, Inc.*, 14 F.4th 1313 (Fed. Cir. 2021); *In re Apple Inc.*, 979 F.3d 1332 (Fed. Cir. 2020).
[12] *In re Apple Inc.*, 979 F.3d 1332, 1344 (Fed. Cir. 2020).

create further congestion moving forward.[13] Delaware had no vacancies last year.

In addition, this is not a case that would require a substantial measure of judicial resources due to complexity and scope. Unlike the burden of a patent case – the Court has previously made an example of transferring such cases[14] – this is a breach of contract case and is relatively straight forward. To project that this case would take significantly longer to litigate in Delaware than Virginia is speculative and should not factor into the Court's decision.

Furthermore, the Third Circuit has not placed "great importance" on this factor.[15] By itself, court congestion is not an appropriate factor for transfer under Section 1404(a).[16]

---

[13] *See United States District Courts – National Judicial Caseload Profile* (December 2022) located at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison1231.2022.pdf.
[14] *General Scientific Corporation v. Den-Mat Holding, LLC*; 2021 WL 4622548 (D. Del. Oct. 7, 2021); *Human Genome Scis., Inc. v. Genentech, Inc.*, CA 11-082-LPS, 2011 WL 2911797 (D. Del. July 18, 2011).
[15] *PNC Bank, N.A. v. United Services Automobile Assn.*, CV 20-1886, 2021 WL 2209245 at *19, (W.D. Pa. June 1, 2021) (citations omitted).
[16] Wright & Miller, Federal Practice and Procedure § 3854 -- Standard in Considering Transfer—Interest of Justice (4th ed.)

### 7. Local Interest and Public Policy factors

The state of Delaware has an interest in this case, because it has an interest in disputes involving companies incorporated in Delaware.[17] It has an interest in seeing that its corporate citizens, such as RAM, are able to enforce contractual rights.[18]

Also, Delaware likely has a public policy interest in this case due to the judicial scrutiny of LLC law. The Delaware Limited Liability Company Act ("DLLCA") could become a focal point of this case because Ramsey made managerial decisions relying on it. For example, during the administrative process to determine coverage, Defendant argued that Ramsey's knowledge of his cancer should be imputed to the company and thus, the company should have provided notice. Ramsey argued that the DLLCA permitted a manager to withhold information of his illness under such circumstances. Delaware has an interest in hearing issues that implicate the DLLCA; there is a local controversy. There is no such seminal LLC law interest from Virginia.

---

[17] *Tessera, Inc. Broadcom Corp. Tessera, Inc. v. Broadcom Corp.*, CV 16-379-LPS-CJB, 2017 WL 1065865 (D. Del. Mar. 21, 2017).

[18] *Andrews Intl., Inc. v. Indian Harbor Ins. Co.*, CV 12-775-LPS, 2013 WL 5461876 at *4, (D. Del. Sept. 30, 2013).

## CONCLUSON

Of the factors scrutinized, the paramount deference given to the Plaintiff's forum choice and the policy interest of the forum state weigh strongly against venue transfer. The other factors – Defendant's alleged forum preference, the claims arising elsewhere, party and witness convenience, and court congestion – are all either insignificant or should be afforded minimal weight. For the reasons set forth herein, because the "balance of the convenience of the parties" does not tip in favor of transfer, Plaintiff respectfully requests that the case remain in the District Court of Delaware.

        MURPHY & LANDON

        */s/ Roger D. Landon*
        ROGER D. LANDON, DE Bar ID No. 2460
        1011 Centre Road, Suite 210
        Wilmington, DE  19805
        (302) 472-8112
        rlandon@msllaw.conm
        Attorney for Plaintiff